STATE of Vermont v. Paul M. McHUGH

[635 A.2d 1200]

No. 91-280

November 9, 1993. The State charged that defendant Paul McHugh "corruptly endeavored to obstruct . . . justice" by picketing the residence of Judge Matthew Katz in an attempt to influence his judicial decisions in pending criminal proceedings involving defendant and others. 13 V.S.A. § 3015.[1] The trial court granted defendant's motion to dismiss, ruling that the statute as applied infringed the First Amendment right to free speech. We affirm.

On April 5, 1990, defendant and several members of Operation Rescue were on the public sidewalk at the residence of Judge Katz protesting his failure to release other members of the group on bail. Defendant carried handbills urging "people of God" to maintain "prayer vigils" at the site until Judge Katz should "repent . . . or immediately remove himself from all further rescue trial proceedings." The demonstration was confined to the sidewalk in front of the residence. There was no disorderly conduct, no obscenity, and no trespass.

As a general matter, peaceful picketing and leafletting are protected speech activities. *United States v. Grace*, 461 U.S. 171, 176 (1983). Public streets and sidewalks are traditional public fora for purposes of free expression and do not lose that status in residential areas. *Frisby v. Schultz*, 487 U.S. 474, 480 (1988). Speech in these areas may be regulated by a content-neutral regulation

[1] 13 V.S.A. § 3015 states, in pertinent part: "Whoever corruptly . . . obstructs or impedes, or endeavors to obstruct or impede the due administration of justice, shall be imprisoned not more than five years or fined not more than $5,000.00, or both."

that is narrowly drawn to serve a significant government interest. *Id.* at 481.

We agree with the trial court that Vermont's obstruction-of-justice statute is content neutral when applied to picketing or leafletting, see *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (regulation content neutral if "justified without reference to the content of the regulated speech"), and that, with respect to picketing, its purpose in protecting the integrity of the judicial system is significant. See *Cox v. Louisiana*, 379 U.S. 559, 562 (1965) (state may regulate picketing near courthouse to assure fair and orderly administration of justice). The issue here is whether the "omnibus clause" of 13 V.S.A. § 3015 is sufficiently narrowly tailored to proscribe the actions of defendant without infringing constitutionally protected speech.

Drawing on case law construing the nearly identical omnibus clause of the federal obstruction-of-justice statute, 18 U.SC. § 1503,[2] the State contends that Vermont's statute requires defendant to have both a specific intent to impede or obstruct the administration of justice and also the capacity to obstruct, thus creating a "limited standard of culpability" that narrows the coverage of the statute. *United States v. Jeter*, 775 F.2d 670, 679 (6th Cir. 1985). If an actor's conduct is "corrupt," as the statute requires, the conduct cannot be constitutionally protected. Indeed,

---

[2] 18 U.S.C. § 1503 states, in pertinent part: "Whoever corruptly . . . obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

the State argues that the statute "covers all interferences with the administration of justice regardless of the means employed," even if those means are merely acts of expression.

This reasoning subordinates First Amendment rights to the interests served by the statute. According to the test of narrowness articulated in *Frisby*, a content-neutral statute that targets speech activity in a public forum must be drafted so as to "eliminate [ ] no more than the exact source of the 'evil' it seeks to remedy." *Frisby*, 487 U.S. at 485. The problem in this case, as the trial court recognized, is that the "evil" of picketing a judge's residence is not the only speech activity potentially restricted by the State's interpretation of the omnibus clause of 13 V.S.A. § 3015. All speech intended to influence judicial decisionmaking, whether by demonstration, radio call-in, letter, editorial, or otherwise, could run afoul of the standard of culpability the State advocates. The State's application of the statute is, thus, overboard. See *Grayned v. City of Rockford*, 408 U.S. 104, 114–15 (1972) (statute overbroad that "sweeps within its prohibitions what may not be punished under the First . . . Amendment [ ]"); cf. *City of Houston v. Hill*, 482 U.S 451, 462–63 (1987) (statute making it illegal to "in any manner oppose, molest, abuse, or interrupt" police officer in execution of officer's duty was overbroad; "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state").

What is more, the line is not clear between speech activity that is "corrupt" and that which is not. Speech that is critical of the judicial system is always intended, to one degree or

another, to influence decisionmaking. Yet, the very same activity could amount to obstruction in one case and not in another, depending on the State's determination of the actor's intent and capacity. This leaves a subjective determination of culpability to government officials and provides no "reasonable opportunity [for a person of ordinary intelligence] to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S at 108; see also *City of Houston*, 482 U.S. at 465 ("Although we appreciate the difficulties of drafting precise laws, we have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them."); *Aubrey v. City of Cincinnati*, 815 F. Supp. 1100, 1104 (S.D. Ohio 1993) (where minister's "John 3:16" banner was taken away, Cincinnati Reds' policy allowing only banners that are in "good taste" at World Series game was unconstitutionally overbroad and vague, "leav[ing] too much discretion in the decision maker").

As defendant points out, a municipal ordinance specifically prohibiting picketing in front of a single residence has passed constitutional scrutiny. See *Frisby*, 487 U.S. at 486. Significantly, federal statutes include not only the omnibus obstruction-of-justice provision that closely parallels Vermont's, 18 U.S.C. § 1503, but also a more specific provision prohibiting picketing or parading near a United States court or a federal judge's residence. 18 U.S.C. § 1507; see *Cox*, 379 U.S at 562 ("A narrowly drawn statute such as [18 U.S.C. § 1507] is obviously a safeguard both necessary and appropriate to vindicate the State's interest in assuring justice under law.").

*Affirmed.*