VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      24-AP-281

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

OCTOBER TERM,   2025

State of Vermont v. Christopher Cochran\*     }     APPEALED FROM:
                                              }     Superior Court, Lamoille Unit,
                                              }     Criminal Division
                                              }     CASE NOS. 23-CR-02797, 24-CR-01257,
                                                    24-CR-03005, 24-CR-04176
                                                    Trial Judge: Mary Morrissey

In the above-entitled cause, the Clerk will enter:

Defendant appeals his convictions and sentence for first-degree aggravated domestic assault and obstruction of justice.  We affirm.

In March 2023, defendant was charged with first-degree aggravated domestic assault, second-degree aggravated domestic assault, and violation of an abuse-prevention order.  The State alleged that defendant grabbed the complainant by the neck and threw her on a bed in front of their child, and that defendant had a prior conviction for first-degree aggravated domestic assault as well as a current abuse-prevention order directing him not to contact or abuse the complainant.

In February 2024, defendant was charged with another count of first-degree aggravated domestic assault, obstruction of justice, and violation of conditions of release.  The State alleged that defendant had punched the complainant on the back of her head.  When police officers responded, defendant falsely told them that the complainant was not at home and told her not to talk to the police.

In March 2024, defendant was charged with obstruction of justice and violation of conditions of release based on allegations that while incarcerated, he called the complainant numerous times and pressured her to change her story and recant her allegations against him so that he could get out of jail.

The parties entered into a plea agreement to resolve the three criminal dockets.  Defendant agreed to plead guilty to one count each of first-degree aggravated domestic assault and obstruction of justice and to plead nolo contendere to a second count of first-degree aggravated domestic assault in exchange for the State dismissing the remaining charges.  The parties agreed to a contested sentencing at which the State would be capped at arguing for thirty

months to twenty years to serve. The court accepted the plea agreement at a hearing in March 2024.

The sentencing hearing was put on hold while defendant was tried on a new, separate count of first-degree aggravated domestic assault, which was filed after defendant entered his pleas on the earlier charges. In June 2024, a jury found defendant guilty of that charge. In September 2024, the court imposed an overall sentence of sixty months to twenty years. This appeal followed.

Defendant first argues that there was an insufficient factual basis for his guilty pleas to obstruction of justice and first-degree aggravated domestic assault. Vermont Rule of Criminal Procedure 11(f) requires the trial court to determine whether there is a factual basis for a plea before entering judgment. "[A]n adequate factual basis sufficient to demonstrate voluntariness must consist of some recitation on the record of the facts underlying the charge and some admission by the defendant to those facts." In re Bridger, 2017 VT 79, ¶ 21, 205 Vt. 380 (quotation omitted). "There is no particular formula to satisfy this standard . . . [b]ut a defendant must, in some manner, personally admit to the factual basis for the charges." In re Gabree, 2017 VT 84, ¶ 10, 205 Vt. 478. To prevail on a Rule 11(f) challenge, defendant must show "by a preponderance of the evidence, that fundamental errors rendered the conviction defective." State v. Rillo, 2020 VT 82, ¶ 8, 213 Vt. 193 (quotation and alteration omitted).

Defendant first argues that the trial court failed to elicit facts demonstrating that the intent element of the obstruction-of-justice charge was satisfied. That charge required proof that defendant corruptly obstructed or impeded, or endeavored to obstruct or impede, the due administration of justice. See 13 V.S.A. § 3015 (defining obstruction of justice). Defendant argues that the State was required to establish that he "reasonably foresaw that the natural and probable consequences of his expressed statements of frustration of being prosecuted and imprisoned pretrial would obstruct justice." Assuming without deciding that this is the mens rea required under § 3015, there was a sufficient factual basis to satisfy that element here.[*] Defendant admitted that he called the complainant at least sixty-four times. During one of the phone calls he yelled and screamed at her to "get my shit dropped," and "[t]ell them you're confused." During another phone call he told her that the only way he could get out of jail was if she recanted her statement and that she needed to go to the state's attorney's office and "just tell them." Defendant expressly admitted that he was putting pressure on the complainant to withdraw her statement with the intent of getting out of jail and having the charges dismissed. These facts show that defendant knew that, if successful, his statements were likely to obstruct the criminal prosecution against him.

Defendant also claims that there was an insufficient factual basis to establish that his alleged assault was against a "family or household member," as required to support the charge of first-degree aggravated domestic assault. See 13 V.S.A. § 1043(a) (defining offense of first-degree aggravated domestic assault). At the hearing, the court asked, "And you agree that [the

---

[*] In State v. Fucci, this Court concluded that it was unnecessary to decide the precise mens rea standard for "corruptly endeavoring" to obstruct justice under 13 V.S.A. § 3015 because the defendant's conduct in that case satisfied any possible standard. The Court explicitly left open the question of whether the phrase "corruptly endeavor" requires specific intent. State v. Fucci, 2015 VT 39, ¶¶ 10 n.3, 11, 198 Vt. 482; see also State v. Kuhlmann, 2021 VT 52, ¶ 25 n.4, 215 Vt. 290 (declining to clarify mens rea for obstruction of justice because conviction was reversed on different basis).

complainant] was, in fact, a family or household member at the time? You were married, correct?" Defendant responded, "We're not married, but—" The court then interjected, "But been in a relationship for a very long time." Defendant responded, "Yes." Defendant argues that this exchange was insufficient to create a factual basis for the element of "family or household member" because it did not establish that defendant and the complainant lived together or were in a sexual or dating relationship.

Defendant's argument fails because the record as a whole shows that there was a factual basis for this element of the offense. The statutory definition of "household members" is "persons who, for any period of time, are living or have lived together, are sharing or have shared occupancy of a dwelling, are engaged in or have engaged in a sexual relationship, or minors or adults who are dating or who have dated." 15 V.S.A § 1101(3); see 13 V.S.A. § 1041 (stating that for purposes of domestic-assault offenses, " 'family or household members' means persons who are eligible for relief from abuse under 15 V.S.A. chapter 21"). In addition to defendant's admission that he had been in a relationship with the complainant for a long time, he agreed that during the incident in question, they were staying at an Airbnb with their son. He further admitted that at the time of his prior domestic-assault charge, he was in a relationship with the complainant and they had four children together. These facts, taken together, were sufficient to establish that defendant and the complainant were household members.

Defendant further claims that at his June 2024 trial, the trial court violated his right to due process by informing the State that it could obtain a certified copy of the docket disposition report (DDR) from defendant's prior domestic-assault case to prove the fact of his prior conviction. Defendant argues that the court stepped out of its impartial role and assisted the State in proving the charge, effectively directing the verdict. Defendant did not preserve this objection for our review by raising it before the trial court, and he does not argue that the asserted error was plain. We therefore do not address his argument. See State v. Orost, 2025 VT 15, ¶ 26, __ Vt. __ (declining to address unpreserved argument where defendant "does not argue plain error"). We note, however, that even if the trial court's statements regarding the DDR were error, defendant ultimately admitted the fact of his prior conviction and waived a jury trial on that issue. Thus, the record does not show that defendant was prejudiced by the alleged error. See State v. Gurung, 2025 VT 52, ¶ 111, __ Vt. __ ("For an error to rise to the level of plain error, defendant must show that the error affects substantial rights and results in prejudice to the defendant." (quotation omitted)).

Finally, defendant argues that at sentencing, the trial court repeatedly stated that his overall sentence was five to ten years to serve. He argues that this oral pronouncement should control over the written sentence of five to twenty years "[b]ased on the general principle that an oral pronouncement at sentencing trumps a subsequent written sentencing order in the event of a conflict." State v. Bouchard, 2020 VT 10, ¶ 31, 211 Vt. 454. This Court has not adopted a standard of review for such claims, but in the federal courts, "whether the spoken and written terms of a defendant's sentence differ impermissibly" is a question of law that is reviewed de novo. United States v. Washington, 904 F.3d 204, 207 (2d Cir. 2018).

At sentencing, the court imposed concurrent sentences of thirty months to ten years for the pled-to domestic-assault charges and thirty months to five years for the obstruction charge. The court imposed a consecutive sentence of thirty months to ten years for the domestic-assault charge for which the jury found defendant guilty. The court then stated, "[f]or an overall sentence of five to ten years to serve. . . . So the overall sentence is five to twenty years to serve, beginning today." The following exchange then occurred:

3

Defense counsel: Did you originally say five to ten, Judge?

The court: Say it again?

Defense counsel: I know you had said thirty to ten years, but then I thought you said five to ten total. Did you mean five to twenty?

The court: If I had said five to ten, I meant five to twenty.

Defense counsel: Oh, okay.

The court: Thank you. So the total is five to twenty. The aggravated domestic assault he was found guilty by jury of, the sentence on that is two and a half to ten. Maybe that's where it got mixed up. Two and a half to ten consecutive, so an overall sentence of five to ten years to serve.

The mittimi subsequently issued by the court reflect an overall sentence of sixty months to twenty years.

We conclude that there is no meaningful conflict between the court's oral and written pronouncements. While the court twice misspoke when describing the overall sentence, it clearly informed defendant that it was issuing, essentially, two consecutive controlling sentences of thirty months to ten years. When directly asked by defense counsel, the court clarified that the overall sentence was five to twenty years. This is consistent with the written mittimi. This case is therefore distinguishable from those cited by defendant, which involved conditions added by the trial court in the written sentences that were not mentioned at the sentencing hearings. See Bouchard, 2020 VT 10, ¶ 32 (remanding for trial court to clarify if defendant's conditions prohibited contact with children under 16, as stated in mittimus, or under 18, as stated at sentencing); Washington, 904 F.3d at 208 (remanding sentence to remove polygraph-testing requirement, because court did not include that requirement in oral sentence). We therefore see no basis to disturb defendant's sentence.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

William D. Cohen, Associate Justice